UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 1:08-po-7-MJK |
| | ) | |
| JOHN TOBIN, | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OF DECISION ON MOTION TO DISMISS**

In a two-count information the Government has charged John Tobin with driving under the influence, in violation of 36 C.F.R. § 4.23(a), and with the separate charge of refusing to submit to a breath test for purposes of determining his blood alcohol content, in violation of 36 C.F.R. § 4.23(c)(1) and (2). Tobin argues that the charge of failure to submit to testing must be dismissed because the arresting park rangers administered to Tobin the warning contained in Maine's implied consent form, which fails to reveal that, under federal law, failure to submit is an independent crime in itself, not merely the basis for an enhanced sentence. Relying on Roberts v. State of Maine, 48 F.3d 1287 (1st Cir. 1995), Tobin argues that it would violate due process precepts if he were to be convicted for failing to submit to testing after receiving a misleading warning that suggested only more limited consequences. (Def.'s Mot. to Dismiss the Charge of Refusing a Breath Test, Doc. No. 3.) I deny the motion.

**Facts**

The Government and Tobin agree on the salient facts. John Tobin was stopped in Acadia National Park for "rolling" a red light. Based on their observations, the park rangers who stopped Tobin arrested him on a charge of driving under the influence pursuant to 36 C.F.R.

§ 4.23(a)(1). They took him to the Bar Harbor Police Station to administer a breath test. A ranger read Tobin the contents of Maine's implied consent warning card, which states:

> If you fail to comply with your duty to submit to and complete chemical tests, your driver's license or permit or right to apply for or obtain a license, will be suspended for a period up to 6 years. Your failure to submit to a chemical test is admissible against you in any trial for operating under the influence of intoxicating liquor or drugs. If you are convicted of operating under the influence of intoxicating liquor or drugs, your failure to submit to a chemical test will be considered an aggravating factor at sentencing which in addition to other penalties, will subject you to a mandatory minimum period of incarceration.

The Maine warning card outlines all of the essential consequences that Maine law imposes for refusing to submit to blood alcohol testing, but it does not indicate that an independent criminal charge of failure to submit could be brought by a federal prosecutor based on the fact that the vehicle was being operated in a national park. Federal law, unlike Maine law, makes it an independent crime to refuse to submit to a blood alcohol test.

Tobin requested that he be able to speak to an attorney before deciding whether to take the test. The rangers afforded him an opportunity to obtain legal counsel, but his attempts were unsuccessful. According to the Government, after approximately one hour and three unsuccessful phone calls, the attending ranger recorded a refusal to submit when Tobin persisted with his insistence that he first talk to an attorney before submitting to the breath test. Tobin does not contest these facts and acknowledges in his motion that he was given an opportunity to call an attorney. To explain why he was not successful in this effort, Tobin offers as a qualification that it was the Sunday night after the Fourth of July.

The information returned against Tobin includes, as count two, an independent charge for failing to submit to blood alcohol testing, in violation of 36 C.F.R. § 4.23(c)(1) and (2).

**Discussion**

In Roberts v. State of Maine, the First Circuit Court of Appeals granted habeas relief to a defendant in a Maine criminal proceeding, which relief precluded the imposition of a mandatory sentence for refusal to submit to blood alcohol testing when the defendant had been given a warning that did not disclose the incarceration-related consequences of refusing to submit to testing and the officer in charge had refused to let the defendant try to contact an attorney for advice. 48 F.3d at 1288-89. Although the Court acknowledged that the defendant's Sixth Amendment right to counsel was not implicated, it reasoned that the refusal to permit the defendant to attempt to secure counsel set up a due process violation because, prior to denying the defendant's request to obtain the advice of counsel, the officer had provided the defendant with a misleading warning.[1] Id. at 1290, 1292. The holding in Roberts turned on two essential factors. The first factor was that the warning given suggested that there were no "irrevocable sentencing consequences involving a mandatory period of incarceration," meaning that the defendant was likely to believe that his decision whether to submit to testing did not place his future liberty in jeopardy. Id. at 1292. Also essential to the Court's ruling was the fact that the officer had *both* provided misleading information *and* refused outright to let the defendant attempt to reach counsel who, according to the Court, "could have . . . informed [him] of the sentencing consequences of a decision not to submit," thereby clarifying the misleading

---

[1] At the time of the events giving rise to the charges against Roberts, the Maine Legislature had recently amended its drunk driving laws to provide for a mandatory sentence of 48 hours for those convicted of operating under the influence if they had refused to submit to blood alcohol testing. The warning read to Roberts, however, was not an updated warning, like the one read in this case, and it suggested that the suspension of Robert's license and the use of his refusal as evidence at trial were the only consequences that would befall his refusal. 48 F.3d at 1292. Here, the situation is different. Under federal law, the refusal to submit to testing can support an independent criminal charge. Because Tobin received the warning contained on the updated Maine warning card—despite being arrested by federal officers for conduct occurring in a national park—he was informed of the potential mandatory period of incarceration under current Maine law, but was not informed that his refusal to submit could result in an independent charge being brought against him in federal court under federal regulations.

information.  Id.  In other words, the Court reasoned that it would not have been fundamentally unfair for mandatory incarceration to be imposed had the state officer only provided an incomplete warning, but that it became fundamentally unfair because the state officer had also refused to provide the defendant with an opportunity to secure legal advice that might have provided the defendant with notice that his decision had serious implications for his liberty interest.  See id. at 1293-94.

Tobin argues that this case is like Roberts.  He argues that the failure to advise him that his refusal to submit could subject him to criminal charges violated his due process rights.  He notes that the language of the Maine form stated that he had been "advised of the consequences," when, in fact, he was not advised of all the consequences.  He asserts that the logical impression that the form warning gives is that one would have to be convicted of driving under the influence before any incarceration could be imposed, when that is not really the case under federal law.  As for the denial of access to counsel, Tobin understands that the facts are different in his case because he was allowed to make some phone calls, but he argues that the distinction is irrelevant because he was unable to reach counsel.

The Government responds that the ranger's decision to let Tobin attempt to reach counsel is a critical distinction that makes Roberts inapposite.  Additionally, the Government observes that the Maine warning indicates the existence of additional penalties not expressly listed.  Because the warning was not as misleading as the one given in Roberts and because the ranger in charge gave Tobin the chance to secure the advice of counsel, the Government reasons that this case does not present any fundamental procedural unfairness.

The analytical framework for addressing this dispute involves three considerations:  (1) the private interest that will be affected by the government's action;  (2) the risk of an erroneous

deprivation of such interest through the existing procedure and the probable utility of additional or substitute procedural safeguards; and (3) the government's interest in adhering to the existing procedure, including fiscal and administrative burdens that additional procedures might entail. Roberts, 48 F.3d at 1292 (citing Matthews v. Eldridge, 424 U.S. 319, 335 (1976)).

Tobin characterizes his private interest as a right to receive a full disclosure of the charges that his conduct exposes him to. When discussing the constitutional deprivation, he speaks in general terms of a due process deprivation, rather than in terms of a liberty deprivation. Tobin seems to recognize that there is no mandatory sentence of imprisonment for refusing to submit to blood alcohol testing. Thus, Tobin proposes that he should have been advised of a charging consequence, not a mandatory sentencing consequence. The simple fact of the matter is that Tobin was advised that he had a duty to submit to blood alcohol testing and that his refusal to do so could result in serious consequences, including mandatory incarceration. Quite unlike Roberts, Tobin was supplied with information sufficient to inform him that his decision in regard to testing had serious potential ramifications for his liberty interest that went well beyond his driving privileges and his interest in the evidentiary record presented during any future prosecution. Consequently, the failure to advise him of an additional potential charge did not deny him the essential information that his decision would potentially impact his liberty interest. Tobin voluntarily demurred in the face of a warning that clearly explained to him that his decision placed his future liberty in jeopardy. This fact placed Tobin in an entirely different predicament from the one presented in Roberts, specifically with respect to how his voluntary action might negatively impact his liberty interest.[2]

---

[2] Stated in terms borrowed from Supreme Court precedent addressed to the Miranda warning, there simply was no "implicit assurance" that Tobin's refusal would not expose him to a potential deprivation of liberty. Cf. Brecht v. Abrahamson, 507 U.S. 619, 628 (1993) (discussing the rule at play in Wainwright v. Greenfield, 474 U.S.

The fact that Tobin was warned of the ramifications that his choice could have on his liberty interest suffices, in and of itself, to undermine Tobin's motion.  But when it is combined with the fact that the ranger in charge did provide Tobin an opportunity to secure the advice of counsel, it is clear that this case does not approach the benchmark set by the First Circuit in Roberts in relation to potentially misleading warnings concerning the failure to submit to blood alcohol testing.  The "unique" situation presented to the courts in Roberts remains unique.  See Roberts, 48 F.3d at 1291 ("The combination of circumstances in this case presents a unique situation in which the state of Maine failed to meet the requirements of fundamental fairness."), 1293 ("We are faced here with a unique situation in which the sentencing consequences of incarceration are imposed not so much for the substantive criminal conduct itself but for the separate volitional act of refusing to cooperate with the investigation of that conduct.").

In summation, and in terms of the Eldridge standard, although it would place no significant burden on the Government to provide park rangers with a warning card to notify DUI suspects of the potential criminal charge for refusing to submit to blood alcohol testing,[3] the warning that was provided in this case amply notified Tobin that his decision implicated his liberty interest.  Consequently, the risk of an erroneous deprivation and the probable utility of an additional warning are not sufficient to make a future conviction on count two offend due process.

---

284, 291 & n.5 (1986), South Dakota v. Neville, 459 U.S. 553, 565 (1983), and Doyle v. Ohio, 426 U.S. 610, 619 (1976), that the crux of the due process concern in the context of the Miranda warning is that a defendant's post-warning silence may not be used against him after the Miranda warning has implicitly assured him that silence will carry no penalty).

[3]   See United States v. Sugg, ___ F. Supp. 2d ___, 2008 U.S. Dist. Lexis 68873, *4, 2008 WL 4173517, *1 (D. Mass. 2008) (quoting language from a warning administered by rangers at the Cape Cod National Seashore, which warning supplements the warnings prescribed by Massachusetts law).

## Conclusion

Defendant's Motion to Dismiss the Charge of Refusing a Breath Test (Doc. No. 3) is DENIED.

*So Ordered.*

October 2, 2008                                         /s/ Margaret J. Kravchuk
                                                        U.S. Magistrate Judge